# United States Court of Appeals
## For the First Circuit

No. 19-2054

UNITED STATES,

Appellee,

v.

CARLOS ROBERTO GARCÍA-PÉREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Barron, Circuit Judge,
McAuliffe,* District Judge.

Kevin E. Lerman, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, were on brief, for appellant.

Gregory B. Conner, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

* Of the District of New Hampshire, sitting by designation.

August 16, 2021

**BARRON, Circuit Judge.** Carlos Roberto García Pérez ("García") received a forty-two-month prison sentence after entering a guilty plea to one count of machinegun possession in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). García challenges the procedural and substantive reasonableness of that sentence. Because we conclude that the District Court failed to offer an adequate explanation for its upward variance from the applicable sentencing range under the Federal Sentencing Guidelines (the "Guidelines"), we vacate García's sentence and remand for resentencing.

## I.

García was arrested by local police officers on February 17, 2019, in Ponce, Puerto Rico. The officers had heard gunshots while performing a patrol and had later seen García throw a firearm and bag to the side of a nearby street. The firearm was a Glock pistol that had been modified to fire automatically. It was loaded with fifteen rounds of ammunition. The bag contained two additional magazines with a combined total of fifty rounds of ammunition.

On February 21, 2019, a federal grand jury returned an indictment against García. The indictment charged García with one count of possessing a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). On May 29, 2019, García pleaded guilty to this count without entering a plea agreement.

At the sentencing hearing on September 19, 2019, the District Court found that García's Base Offense Level ("BOL") was twenty pursuant to U.S.S.G. § 2K2.1(a)(4)(B), in part because his offense involved a machine gun and, thus, "a firearm that is described in Title 26, United States Code section 5845" and because García was a "prohibited person" at the time of the offense, which the Guidelines define as including an "unlawful user of . . . any controlled substance," see 18 U.S.C. § 922(g)(3); U.S.S.G. § 2K2.1 cmt. 3. The District Court then applied a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b), resulting in a Total Offense Level ("TOL") of seventeen. The District Court also found that García had no prior known arrests or convictions. Based on García's TOL and criminal history, the District Court then calculated García's Guidelines sentencing range ("GSR") to be twenty-four to thirty months of imprisonment.

García requested a downward-variant sentence of twelve months. The mitigating factors to which he pointed in support included his challenging childhood, his young age at the time of the arrest (he was nineteen years old), his repentance and maturation since then, his employment history, his lack of prior arrests and convictions, and his mother's death and partner's miscarriage during the seven months of his confinement.

The government requested thirty months -- the top of the GSR. But, the assistant U.S. attorney ("AUSA") who represented

- 4 -

the government at the hearing personally distanced himself from this request before stating it.  He explained:

> I am not the undersigned AUSA on this case, but I have read the facts, and the facts are extremely disturbing. . . .          [T]his Defendant was caught carrying a machine gun with 15 rounds, and a fanny pack with two additional extended magazines, one carrying 24 rounds and another carrying 26 rounds.  Your Honor, we are talking about the second most popular city in Puerto Rico, in the downtown area, with restaurant[s] and bars on a Saturday night, or a Sunday, early morning. And the fact that Ponce is seeing increasing violence -- I myself have another case in downtown Ponce, that area, that we are seeing guns and drugs in the downtown Ponce area, where people deserve a safe community, and you have a Defendant walking around with a gun capable of firing automatically, with 65 rounds of ammunition, should be troubling to the Court.  Deterrence is needed. . . .  If I was assigned this case, Your Honor, I would ask for an upward variance, but I am not.  I respect the underlying Prosecutor, and I respect his request for 30 months.  So I will request a sentence of 30 months.

Before addressing the parties' requests, the District Court turned first to considering "the other sentencing factors set forth in Title 18, United States Code section 3553(a)."  It stated:

> Mr. García is 20 years old.  He has a ninth grade education, was employed at an air-conditioning company for the past two years, and has a history of using marijuana and Percocet pills without a prescription.  He grew up in a disfunctional family.  He was abandoned by his father, and he witnessed his mother's drug addiction since he was a child. He suffers from attention deficit and

- 5 -

hyperactive disorder, which caused him to struggle in school, which got worse due to lack of guidance. Mr. García possessed a machine gun, a dangerous and unusual weapon, capable of killing many persons in a matter of seconds. He also had a total of 65 rounds of ammunition and three magazines. One of the magazines was in the firearm and was loaded, and the other two magazines were extended magazines, which were also loaded.

The District Court next "f[ou]nd[] that neither sentence requested [be it García's requested sentence of twelve months or the government's requested sentence of thirty months] reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. García, or addresses the issues of deterrence and punishment." It then imposed a variant sentence of forty-two months -- twelve months more than the top of the GSR, which the government had requested.

García timely appealed.

## II.

García argues on appeal that his forty-two-month sentence is both procedurally and substantively unreasonable. We begin with his claims of procedural error, which we review for abuse of discretion when preserved. See Gall v. United States, 552 U.S. 38, 51 (2007). In applying the abuse of discretion standard, we review the District Court's factual findings for clear error and its legal conclusions de novo. See United States v.

Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020); United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).

## A.

García's first claim of procedural error concerns the District Court's treatment of the mitigating factors in the record. Insofar as he means to contend that the District Court failed even to consider the mitigating factors of his youth and prior clean record, we find no merit to his contention even assuming that he preserved it. For, the District Court expressly mentioned his age and lack of prior arrests and convictions. See United States v. Severino-Pacheco, 911 F.3d 14, 22 (1st Cir. 2018) (noting that although "the emphasis on his personal circumstances was not as apparent as [the defendant] would have preferred, 'brevity is not to be confused with inattention'" (quoting United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014))).

Insofar as García means to contend instead that the District Court failed to give adequate weight to those mitigating factors, he preserved that contention below, but it is not clear that it is a claim of procedural error at all. See United States v. Caballero-Vázquez, 896 F.3d 115, 120 n.1 (1st Cir. 2018). Even assuming that it is, however, we find no error. For, as we have explained, "the weighing of [§ 3553(a)] factors is largely within the court's informed discretion." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011); see also United States v. Pantojas-

- 7 -

Cruz, 800 F.3d 54, 59 (1st Cir. 2015). And "that the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593.

**B.**

García's second claim of procedural error concerns the District Court's explanation of its chosen sentence. That explanation, he contends, was inadequate because it did not provide case-specific reasons for a variance of such magnitude.[1]

The government contends that García did not make this argument during the sentencing hearing and that our review is only for plain error. But, below García both "object[ed] . . . to the sentence for being procedurally unreasonable" and supplied more specific reasons for objecting -- among them, "that the Court gave little weight to mitigating factors" and "that the Court gave excessive weight to aggravating factors." No more was needed "to

---

[1] Under our precedents, this argument "can be characterized as either a [claim of] procedural error or a challenge to the substantive reasonableness of the sentence." United States v. Crespo-Ríos, 787 F.3d 34, 37 n.3 (1st Cir. 2015); see also United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (characterizing a similar argument as substantive). Because either characterization is possible, we adopt García's procedural framing of his claim. See United States v. García-Mojica, 955 F.3d 187, 191-92 (1st Cir. 2020) (characterizing a district court's "fail[ure] to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range" as a procedural error (quoting United States v. Gierbolini-Rivera, 900 F.3d 7, 11-12 (1st Cir. 2018))).

call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017); see also United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) ("To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision."). We therefore review for abuse of discretion. See Gall, 552 U.S. at 51.

The Supreme Court of the United States has made clear that a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at 50. In doing so, moreover, the district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id.; see also United States v. Ofray-Campos, 534 F.3d 1, 43 (1st Cir. 2008) ("The farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." (quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) (Posner, J.) (omission in original))).

Here, the District Court imposed an upward variance of twelve months from the applicable GSR of up to thirty months. And

yet, in analyzing the § 3553(a) factors, the District Court did not adequately explain its basis for a variance of that length.

The District Court did express special concern about García's "possess[ion of] a machine gun," which it called a "dangerous and unusual weapon, capable of killing many persons in a matter of seconds." But, "[w]hen a § 3553(a) consideration is already accounted for in the guideline range, a sentencing Court 'must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.'" United States v. Rivera-Santiago, 919 F.3d 82, 85 (1st Cir. 2019) (quoting United States v. Guzman-Fernandez, 824 F.3d 173, 177 (1st Cir. 2016)). Thus, the District Court's reliance on García's possession of a machinegun cannot suffice as an adequate explanation for its variance. After all, García's BOL had been calculated pursuant to U.S.S.G. § 2K2.1(a)(4)(B) based in part on the finding that he possessed a machinegun, and, as we have made clear, the concerns that the District Court highlighted about the dangers posed by machineguns "are universal in their application, and we have no reason to believe that they were not factored into the mix when the Sentencing Commission set the base offense level for the offense of conviction." Rivera-Berríos, 968 F.3d at 136. The District Court here, just like the district court in Rivera-Berríos, cited concerns that machineguns are "highly dangerous and

- 10 -

unusual," can fire over a thousand rounds per minute, and exist largely "on the black market" as explanations for a variance.  Both courts failed to explain why the defendant's machinegun possession "was entitled to extra weight."[2]  Id.

The government nonetheless contends that this case differs from Rivera-Berríos.  It points here to the fact that the District Court also noted that García "had a total of 65 rounds of ammunition and three magazines" and that "[o]ne of the magazines was in the firearm and was loaded, and the other two magazines were extended magazines, which were also loaded."  The reference to these findings, the government contends, suffices to explain why the District Court concluded that García's conduct fell outside of the heartland of the GSR.

At the time at which the District Court imposed its sentence here, however, our decision in Rivera-Berríos had not yet been issued.  But, now that it has been, a concern is that in that case, too, the defendant possessed more than just a machinegun, yet we concluded that the defendant's two magazines and thirty-

_____

[2]  The District Court did also consider García's "history of using marijuana and Percocet pills without a prescription."  But, insofar as the District Court viewed this personal characteristic as an aggravating factor, it had already taken account of that factor when it calculated García's BOL pursuant to U.S.S.G. § 2K2.1(a)(4)(B) based in part on finding that he was "a prohibited person at the time of the offense."  And, the District Court nowhere explained why that finding was nevertheless entitled to extra weight.

seven rounds were "entirely consistent with simple possession of a machine gun." Id. at 135.

To be sure, García had one more magazine and twenty-eight more rounds than the defendant in Rivera-Berríos. But, defendants are entitled to a "sufficiently particularized [and] compelling" explanation when they are subject to a significant upward variance. Ofray-Campos, 534 F.3d at 43. And we therefore conclude that the prudent course is to vacate and remand for the District Court to consider this sentence in light of our holding in Rivera-Berríos. The difference in the facts of the two cases is not so great that we can be confident that the District Court, knowing of our conclusion in Rivera-Berríos would have deemed García's ammunition a reason to vary as it did. The overall purpose of the federal sentencing regime to "bring about greater fairness in sentencing through increased uniformity" accords with this conclusion. Rita v. United States, 551 U.S. 338, 354 (2007).

The government does not develop any argument here -- such as it references in United States v. Carrasquillo-Sanchez, No. 19-2151 (1st Cir. August 16, 2021) -- for affirming the sentence on grounds of general deterrence based on community-based factors that would seemingly apply to any person convicted of machinegun possession in Puerto Rico. Nor did the District Court attempt to justify its sentence in a rigorous manner on such a basis. Nonetheless, the government argues that we should affirm

the sentence based on facts elsewhere in the record on which the District Court's explanation may be understood impliedly to rest and which, the government contends, provide additional context for us to conclude that its explanation was adequate.

Those facts include the ones cited by the substituting AUSA prior to the District Court's imposition of the variant sentence, namely that García carried the machinegun in a crowded downtown area in Ponce at nighttime and that Ponce was "seeing increasing violence." And the government also points to facts referenced by the Presentencing Report ("PSR"), namely García's admission that "he was with the wrong acquaintances for protection since he was being sought out by consensual partners of several women with whom he had affairs" and that on the night of his arrest he "had an argument with" one such "guy." According to the government, those circumstances all "contribute[] to the impression that [García's] offense was dangerous."

But, while "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did," such inferences must be anchored in "what the judge did." United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), abrogated on other grounds by Rita, 551 U.S. 338. And here, nothing in the District Court's summary of the facts and weighing of the sentencing factors indicates that it relied for its variant sentence on the

circumstances mentioned by the substituting AUSA or the PSR.  Nor did the government argue below to the District Court that any of these facts warranted a variant sentence.  Indeed, as we have noted, the substituting AUSA expressly recommended that no variance be made.

Thus, given our decision in <u>Rivera-Berríos</u>, which rejected the contention that the additional magazine and ammunition there sufficed to support a significant variance, and given the District Court's exclusive reference to the magazines and ammunition as the only aggravating factors supporting the variance aside from the machinegun (which could not itself support such a variance), we leave it to the District Court to consider the appropriate sentence in light of these considerations.  We do note, however, that, given our reasons for vacating and remanding, we do not mean to suggest that the District Court is free to vary upwards even further, as nothing in <u>Rivera-Berríos</u> itself -- which is our reason for remanding -- provides any basis for doing so.

## c.

Although we are remanding for the reasons just explained, we also must address García's claim of substantive error.  For, here, García takes aim not at the quality of the explanation for the variance that resulted in a prison sentence of forty-two months, but at the substantive validity of a sentence of this length.

García first argues that the length of his sentence is excessive compared to the sentences of similarly situated defendants. In support, he lists eighteen cases in which defendants were sentenced to shorter prison terms for violating 18 U.S.C. § 922(o) in Puerto Rico.

The government contends that García failed to preserve this argument below. But, we need not address this contention, because, even assuming that García preserved his disparity argument, we find no abuse of discretion.

We have held that "[a] credible claim of sentencing disparity requires that the proponent furnish the court with enough relevant information to permit a determination that he and his proposed comparators are similarly situated." United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017). García fails to furnish us with such information in this case. He does not establish that these cases are comparable to his own, but instead merely lists their outcomes. We thus reject García's disparity claim. See id. (rejecting disparity claim where defendant's "brief contains a barebones list of the various coconspirators and their sentences").

García also argues that the length of his sentence is substantively unreasonable because the machinegun he had -- an altered handgun -- falls squarely into the heartland of his GSR. But, as we have explained, a variance of this length could not

have been predicated on the possession of the machinegun alone. Thus, we do not see how the fact that the machinegun was no more than standard issue on García's account supports the conclusion that a variance based on other considerations would be unreasonable.

### III.

Because we conclude that the District Court committed procedural error when it failed to offer an adequate explanation for its upward variance, we order García's sentence to be **vacated** and **remand** for resentencing.