# United States Court of Appeals
## For the First Circuit

Nos. 21-1915
     21-1917

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN DANIEL SIERRA-JIMÉNEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

Before

Gelpí, Montecalvo, and Rikelman,
Circuit Judges.

Raúl S. Mariani Franco on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E.
Bauzá-Almonte, Assistant United States Attorney, and Julia M.
Meconiates, Assistant United States Attorney, on brief for
appellee.

February 23, 2024

**GELPÍ**, **Circuit Judge**.  Defendant Juan Sierra-Jiménez ("Sierra") pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court sentenced him to fifty-eight-months' imprisonment, as well as to a consecutive eighteen-month sentence for his related supervised release violations.  In this consolidated sentencing appeal, Sierra challenges the procedural reasonableness of his fifty-eight-month sentence and asserts that the government breached the plea agreement with respect to his eighteen-month sentence.  Having discerned no error, we affirm.

## I. BACKGROUND

We briefly begin with a review of the relevant facts leading to the indictment for the new criminal conduct.  Because this appeal follows a guilty plea, we draw the facts from the plea agreement, the presentence investigation report ("PSR"), the change-of-plea colloquy, and the sentencing transcript.  See United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023) (quoting United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017)).

While on supervised released for an earlier federal firearm offense, Sierra failed to meet with his probation officer to whom he also lied about where he had been.  As a result, on or about March 22, 2021, the probation officer sought and obtained an arrest warrant.  Upon his arrest, Sierra was found with a Glock 22

pistol, modified to fire automatically as a machine gun. Agents found the gun loaded with thirteen rounds in a magazine and one round in the chamber, an additional loaded twenty-two-round magazine containing twenty rounds, and approximately five grams of what appeared to be heroin. Sierra was transported to a detention center for processing and admitted thereat that the gun and other items belonged to him. He was subsequentially indicted for possessing a machine gun and being a felon in possession of a firearm. 18 U.S.C. §§ 922(g)(1), 922(o), 924(a)(2). Sierra pled guilty to the latter count by way of plea agreement.

The plea agreement proposed an advisory guideline range calculation consisting of a base offense level of twenty for the firearm count, see U.S.S.G. § 2K2.1(a)(4), and a three-level reduction for acceptance of responsibility, see U.S.S.G. §§ 3E1.1(a)-(b), for a total offense level of seventeen, which in turn provides a sentencing range of thirty-seven to forty-six months, taking into account his criminal history. Both parties agreed to recommend a sentence at the lower end of the advisory guideline range. As for the supervised release violation, the parties agreed to recommend a concurrent sentence. The plea agreement contained a stipulation of facts which provided that during his arrest, Sierra was found with a gun, modified to shoot automatically, loaded with thirteen rounds and an additional round

in the chamber, as well as a twenty-two-round magazine containing twenty rounds. No mention of the purported heroin seized was made.

The Probation Office next filed a PSR with a different advisory guideline calculation. Because Sierra's possession of the firearm in question followed two prior felonies, the base offense level was twenty-six, as per U.S.S.G. § 2K2.1(a)(1)(A)(ii)(B). For his acceptance of responsibility, three levels were reduced. U.S.S.G. § 3E1.1(a). Sierra's two prior convictions and supervision status yielded a criminal history category of IV, which juxtaposed with the total offense level, resulted in a guideline sentencing range of seventy to eighty-seven months. The PSR was more detailed than the plea agreement's stipulation of facts, specifically noting the suspected heroin that was also found during Sierra's arrest. In his sentencing memorandum and during sentencing, Sierra objected to the higher guideline calculation and mention of the suspected heroin.

The sentencing and revocation of supervised release hearings took place back-to-back on October 18, 2021. At sentencing, the district court denied Sierra's objections to the PSR. The district court found encouraging Sierra's expressions during allocution that he strived to be a better father to his children and correct his life's trajectory. However, it rejected the parties' joint sentence recommendation given that this was

- 4 -

Sierra's third machine gun offense.[1]  The district court noted that it would normally be inclined to accept sentences jointly recommended by the parties, but here could not "in good conscience" do so.  While it adopted the PSR's guideline calculations, the district court nonetheless varied downward from the applicable sentencing range.

In balancing the 18 U.S.C. § 3553(a) factors, the district court discussed Sierra's personal history, his two previous federal convictions for machine gun possession, and his role in the offense.  The district court also listed the items found during Sierra's arrest, which included a modified and loaded gun, extra rounds of ammunition, and about five grams of "purported" heroin.  Ultimately, the district court sentenced Sierra to fifty-eight-months' imprisonment.

After pronouncing sentence for the new criminal conduct, the district court proceeded to the revocation hearing.  Sierra requested an eighteen-month concurrent sentence while the government made no specific recommendation.[2]  The district court then imposed the eighteen-month sentence, however choosing that it run consecutively to the fifty-eight-month sentence.  The district

---

[1] Sierra has two prior convictions for illegal possession of a machine gun and one prior supervised release violation.

[2] The district court inquired whether the government would like to make a statement, to which it responded, "No."

court supported this outcome by noting that Sierra violated the conditions of supervised release by engaging in new criminal conduct and failing to follow the probation officer's instructions, classified as Grade A and Grade C violations, respectively, under U.S.S.G. § 7B1.1. The district court further stated that the violations and new criminal conduct displayed Sierra's "total disregard" for the supervised release process. This timely appeal followed.

## II. DISCUSSION

Sierra first argues that that the district court's mention of heroin impacted the procedural reasonableness of his sentence in the new criminal case. Second, he posits that the government breached the plea agreement by failing to recommend a concurrent sentence. We address each contention seriatim.

### A. Procedural Reasonableness

Preserved challenges to the procedural reasonableness of a sentence are reviewed under "a multifaceted abuse-of-discretion standard." United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020) (quoting United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016)). The district court's interpretation and application of the guidelines is reviewed de novo, its factfinding for clear error, and its judgment calls for abuse of discretion. Mendoza-Maisonet, 962 F.3d at 20. Procedural errors include a sentence based on clearly erroneous facts particularly when facts

are "based solely on unreliable evidence" and cannot be established by a preponderance of the evidence. United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021); United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020). The clear-error standard is satisfied where "upon whole-record review, an inquiring court 'form[s] a strong, unyielding belief that a mistake has been made.'" Mendoza-Maisonet, 962 F.3d at 20 (alteration in original) (quoting United States v. Montañez-Quiñones, 911 F.3d 59, 66 (1st Cir. 2018)).

Sierra contends that the district court committed clear error by finding that he possessed heroin during his arrest and using that finding to reach a sentence higher than that recommended by the parties. This argument falls flat because the district court never made a factual finding that Sierra possessed heroin. Review of the record illustrates that, at sentencing, the suspected heroin was only mentioned once by the district court and that was merely when it listed the items that the agents found at the time of arrest. Further, it was only referenced as "purported heroin," demonstrating that the district court did not find that the substance was in fact heroin.

Nor did the district court rely upon the possession of suspected heroin in determining Sierra's sentence for the new criminal conduct. The record here explicitly provides the facts which the district court relied upon to justify Sierra's sentence:

how the new criminal conduct had occurred while he was on supervised release, his criminal history of two prior felony convictions for possession of a machine gun, and the instant case being his third machine gun conviction. These specific factual findings were stressed by the district court more than once while it addressed the 18 U.S.C. § 3553(a) factors, hence demonstrating that the same, rather than the possession of suspected heroin, justified the sentence imposed.

Sierra also contends that the suspected heroin was mentioned by the district court specifically while it was discussing the elements of the offense. The elements of the instant offense do not involve nor consider the possession of any controlled substance. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). Sierra, in fact, did not receive any guideline enhancement for the suspected heroin applied, nor any upward variance based upon said ground. Therefore, the district court's mere iteration of the items found during arrest, especially as here where the suspected heroin was only mentioned once in the entirety of the hearing, does not even come close to clear error. As such, the mention of the suspected heroin does not render Sierra's sentence procedurally unreasonable.

### B. Breach of the Plea Agreement

"Ordinarily, whether the government has breached its plea agreement with a defendant is a question of law and our review

is plenary." United States v. Rivera-Ruiz, 43 F.4th 172, 179 (1st Cir. 2022) (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 57 (1st Cir. 2007)). When a defendant fails to notify the district court of the purported breach and had knowledge to do so, such as here, we review for plain error. Rivera-Ruiz, 43 F.4th at 179 (citing Rivera-Rodríguez, 489 F.3d at 57). Under this standard, "we consider whether: (1) there was error, (2) it was plain, (3) the error affected the defendant's substantial rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings." Rivera-Ruiz, 43 F.4th at 179 (quoting Rivera-Rodríguez, 489 F.3d at 57).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022) (alteration in original) (quoting Santobello v. New York, 404 U.S. 257, 262 (1971)). "In addition to entitlement to the government's technical compliance with the agreement, [defendants are] entitled to the 'benefit of the bargain' and the 'good faith' of the prosecutor." United States v. Brown, 31 F.4th 39, 50 (1st Cir. 2022) (quoting Ubiles-Rosario, 867 F.3d at 283). "The critical question is whether the prosecutor's 'overall conduct [is] reasonably consistent with making [the promised] recommendation, rather than the reverse." Lessard, 35 F.4th at 42

(alterations in original) (quoting United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992)).

Sierra contends that the government breached the plea agreement by failing to specifically make a recommendation during the revocation hearing for a concurrent eighteen-month sentence as agreed upon. We need not address the first and second prongs as we disagree with Sierra as to prejudice. Sierra posits that had the government affirmatively recommended a concurrent sentence, then "the [district] court may have very well agreed to [the] modified sentence." There is nothing in the record to suggest that the district court would in fact have imposed the recommended sentence had the government affirmatively made the recommendation. See United States v. Rijos-Rivera, 53 F.4th 704, 711 (1st Cir. 2022) (citing United States v. Mulero-Vargas, 24 F.4th 754, 759 (1st Cir. 2022)) (stating the "customary rule" that district courts are not bound to the sentencing recommendations made by the parties). Rather, the district court was made aware of the parties' joint concurrency recommendation via the plea agreement, the PSR, and by Sierra himself during the revocation hearing.[3] The

---

[3] The court notes that, per the plea agreement, the government agreed to "recommend that [the revocation sentence] be served concurrent to the sentence imposed in" the underlying crime. Although we conclude that the government's failure to recommend a concurrent sentence did not impact the court's decision, we express our concern with the government's failure to fulfill this obligation.

district court ultimately chose to reject the recommended concurrent sentence given Sierra's conduct which "clearly demonstrated . . . a total disregard for the supervision process[,] . . . a lack of interest in becoming a prosocial citizen[,] and his inability to live a law abiding lifestyle after his release from imprisonment." Such explicit findings, combined with "the nature and seriousness of the breach of trust" concerning supervised release violations "for criminal conduct related to possession of a machinegun," provide more than ample support for the district court's grounds for imposing the consecutive sentence instead of a concurrent one. Accordingly, we are unpersuaded by Sierra's speculation that the district court would have imposed a concurrent sentence if the government had uttered such recommendation. Therefore, Sierra has not met his burden in proving that the government's failure to orally recommend a concurrent sentence prejudiced him, and hence find that no plain error lies.

### III. CONCLUSION

For the foregoing reasons, we **<u>affirm</u>**.